UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                        CASE NO. 12-20021

        v.                                HON. NANCY G. EDMUNDS

D-1  ADELSO ALEXANDER VICENTE,

        Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

### I. INTRODUCTION

On April 9, 2012, Defendant pleaded guilty to an Information that charged one count of persuading or coercing a minor to engage in sexual activity in violation of Title 18, United States Code, Section 2422(b).  The Rule 11 Plea Agreement contemplated an advisory guideline range of 168 to 210 months.  The Probation Department calculated a guideline range of 120 to 135 months.  As discussed below, the government believes the Rule 11 accurately reflects the proper advisory guideline calculation and recommends a custodial sentence of 135 months with the Bureau of Prisons.

### II. STATEMENT OF FACTS

On the morning of September 14, 2011, a 13 year-old female ("the victim") was reported missing after she took the bus to school.  Information led law enforcement to conclude that when she exited the bus, she entered a car driven by an adult male.  Later

-1-

that day, the Shelby Township Police Department located the male's car and the victim at the War-Del Motel in Shelby Township. The victim was with 28 year-old Adelso Vicente, Defendant, who traveled to Michigan from California.

The victim was interviewed and reported that she first met the defendant four months earlier through Facebook. During their on-line conversations, the victim advised the defendant that she was 13 years-old. The defendant told the victim that he was 20 years-old, from Guatemala, and currently living in California. As their relationship developed on-line, the defendant repeatedly engaged in inappropriate conversations with the victim, asked her for her phone number, and asked for naked pictures.

Specifically, the defendant regularly asked the victim for "sexier" type pictures.[1] They also spoke of their affection for and how much they missed each other. Defendant continually asked for the victim to send him pictures of herself. On one day, the defendant wrote "why if she loves him so much she won't send a naked picture or her cell phone number." Later that day, the defendant wrote that he "hasn't died yet but wouldn't mind dying between her legs." The next day, the defendant asked the victim "since she loves him, [will he get] either the cell number or the picture." The day after, the defendant tells the victim that "he continues to suffer because he doesn't have any naked picture of her to look at but he knows she will send it soon."[2]

---

[1] The Facebook communications were translated from Spanish to English by an FBI translator.

[2] The Facebook communications revealed that on at least one occasion, the victim represented that she was 16 years-old and the defendant said he was 21 years-old.

At first, the victim continuously refused to provide even her cell phone number. The victim eventually gave in and they exchanged cell phone numbers. Once the phone numbers were exchanged, they communicated telephonically and through text messages. Through text messages, the defendant asked for and received the victim's address.

Approximately one week after the defendant received her address, he drove from California to Michigan to meet the victim in person. They met at a park near the victim's home for approximately two hours. During that time, they talked, hugged, kissed, and the defendant gave the victim a stuffed animal. The defendant asked the victim to have sex with him but the victim refused. In the end, the defendant returned to California.

After the defendant returned to California, he sent nude photographs of himself to the victim's cellular phone. The victim reported that over several months, through text messages, she received approximately 20 pictures of the defendant naked. The defendant later wanted the victim to take and send naked pictures of her after she received naked pictures of him. Again, the victim continuously refused or made excuses for not sending any pictures. Once more, the defendant was relentless and continuously implored the victim to demonstrate her love by sending him naked pictures. As their "love" intensified, the defendant asked the victim "if she would abandon everything she has to go live with him." When the victim indicated she might consider it, the defendant asked "if she would leave her family and live with him while continuing school . . . ." On the same day he told the victim "if she loves him, why she is [sic] scared to send him a nude

picture." She responds that "she doesn't really know why but it [sic] just scared to do it." Despite her refusal to send him a picture, the victim reiterates her love for him.

In the end, the victim again gave in and agreed to send the defendant naked pictures. The defendant told the victim what pictures to take, what body parts to show, and to touch her breasts and vaginal area in the pictures. In total, the victim texted approximately 25 naked pictures of herself to the defendant's cellular phone. The victim indicated that they also talked "dirty" to each other which included conversations about sex and sexually explicit conduct. The suspect repeatedly solicited the victim for sex. After some time, the victim agreed to the sex with the defendant if he came back to Michigan.

On September 12, 2011, the defendant traveled from California to Michigan for the second time. The defendant arrived early in the morning and made arrangements to meet the victim at her school. As per her usual routine, the victim boarded her school bus and arrived at school at approximately 7:50 in the morning. Having likely followed the victim's bus to her school, the defendant was waiting for the victim when she exited the bus. The victim exited her bus and got directly into the defendant's car. The defendant drove them to the War-Del Motel in Shelby Township, Eastern District of Michigan, where they entered the defendant's room.

The defendant and victim started kissing and, in a short time, undressed. The defendant digitally penetrated the victim, performed oral sex and anal sex on the victim, and had the victim perform oral sex on him. The victim reported that the anal sex, which

occurred twice, hurt so much that she had to ask the defendant to stop. The defendant attempted to put his penis inside the victim's vagina but did not because that also hurt her too much. The defendant never used a condom. Before they got dressed, the defendant and victim took a shower together. During a forensic interview, the victim was shown three pictures taken in the motel room. The victim identified herself but was unaware the defendant took the pictures. The victim also reported that the defendant directed her not to talk about what happened because he could go to jail for having sex with a girl under the age of 18 years-old.

The victim's parents were subsequently interviewed. The victim's father recalled observing a vehicle, which matched the description of the defendant's car, parked in front of his home several months earlier. The father saw a Hispanic looking male sitting in the vehicle looking at his daughter.

A forensic nurse examiner examined the victim and collected evidence from the victim's body soon after she was recovered. The nurse observed approximately five tears on and near the victim's rectum, a white discharge from the victim's vagina, and red and blue hickies covering the victim's neck, chest, and breasts. The nurse also reported that the victim was quiet and tearful during the physical examination.

A forensic examination of the defendant's phone and SD card revealed multiple naked pictures of the victim. The pictures depicted the victim's breasts, buttocks, and vagina. Most were taken by the victim but some were surreptitiously taken by the defendant while in the motel room with the victim.

### III.  ADVISORY SENTENCING GUIDELINES

The government and the Rule 11 Plea Agreement contemplated an advisory guideline range of 168 to 210 months.  The United States Probation Department calculated an advisory guideline range of 120 to 135 months.  Both the government and Probation began their calculations with USSG §2G1.3.  The calculations are different because the government concluded that the cross-reference in §2G1.3(c)(1) applied.  The Probation department concluded §2G1.3(c)(1) was inapplicable in this case.

Under §2G1.3(c)(1), in addition to §2G1.3, the parties are to calculate the guidelines under §2G2.1 and apply the higher range if  "the offense involved causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct."  USSG §2G1.3(c)(1) is to be "construed broadly and includes all instances in which the offense involved employing, using, persuading, inducing, enticing, coercing . . . a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct."  USSG §2G1.3, comment. (n.5(A)).  Sexually explicit conduct includes the lascivious display of the genitals or pubic area of any person.  *See* 18 U.S.C. § 2256(2)(A)(v).  Consequently, if, during the offense, the defendant persuaded, indicted, or coerced the victim to produce sexually explicit images, §2G2.1 must be scored and used if the range is higher than the range calculated under §2G2.2.

In *United States v. Veazey*, 491 F.3d 700, 702 (7th Cir. 2007), the defendant plead guilty to attempted enticement of a minor under 18 U.S.C. § 2422(b). The defendant had engaged in graphic sexual online conversations with an undercover officer posing as a 15 year-old girl. *Id*. The defendant persistently, through numerous communications, asked the 15 year-old to take pictures of herself telling her "he was falling in love with her." *Id*. at 703. At sentencing, the district court applied the USSG §2G1.3(c)(1) cross reference to which the defendant objected. The court ruled that the guidelines "make clear that the cross-reference should apply if any one of the defendant's purposes in committing the offense was to create a visual depiction thereof." *Id*. at 707.

The *Veazey* court cited the Ninth Circuit case of *United States v. Hughes*, 282 F.3d 1228 (9th Cir. 2002). The *Hughes* court ruled that "the cross-reference was to apply broadly and include 'all instances' where the defendant had a purpose to create a visual depiction . . . . The court needed only to determine 'whether one of the defendant's purposes was to create a visual depiction.'" *Veazey*, 491 F.3d *Id*. at 707 (citing *Hughes* at 1231-32). See also *United States v. Dye*, No. 09-3410, 2010 WL 4146187, at *3-4 (3rd Cir. 2010) ("It is sufficient that creating a visual depiction of Jess was just one of Dye's purposes . . . ."); *United States v. Mai*, 08-6016, 2008 WL 4139383, at *4-5 (10th Cir. 2008) (citing *Veazey*, applying the cross-reference even if no pictures were actually created, "that the defendant solicited and inquired about taking photographs of the person he believed to be a 14 year-old girl" was enough).

The defendant, on multiple occasions, persuaded and begged the victim to take and send sexually explicit pictures. The victim initially avoided sending the defendant pictures but gave in to the defendant's persistence. When the defendant was arrested, multiple images of the victim, naked, were found on his phone. In some pictures, the victim is touching her vagina, squatting naked, and taking close-up pictures of her vagina. The images are unquestionably lascivious in nature and meet the statutory definition of sexually explicit conduct. The defendant's requests for these sexually explicit pictures were intertwined, during his offense conduct, with his recurring requests to meet the victim in person. Interpreting USSG §2G1.3(c)(1) broadly and inclusively as directed by the application note, while the defendant's used the Internet to meet the victim for sex, he also persuaded and coerced the victim to produce the sexually explicit pictures.

Because the advisory guideline range under §2G2.1 (168 to 210 months) is greater than the range under §2G1.3 (120 to 135 months), the guideline range calculated under §2G2.1 is the applicable guideline range.

### IV.  SENTENCING FACTORS, TITLE 18 U.S.C. §3553

A. NATURE AND CIRCUMSTANCES OF THE OFFENSE, HISTORY AND CHARACTERISTICS OF THE DEFENDANT, 18 U.S.C. §3553(a)(1).

The nature and circumstance of the offense involved the use of the Internet to knowingly enter into a sexual relationship with a minor. Defendant principally initiated conversations related to sexual acts, the transmission of inappropriate pictures, and discussions related to having the minor leave her family to live with him. Initially, the victim did not give the defendant her phone number or provide any pictures. Later in

their relationship however, the defendant's persistence paid off and he ultimately convinced the victim to take and send him sexually explicit pictures. Defendant would tell the victim that he questioned her love or that he was suffering without sexy and naked pictures of her. Defendant also sent multiple pictures of himself, naked, to the victim. Defendant would say or do anything to encourage the victim to send him naked pictures.

When the defendant drove to Michigan, he was fully aware that the victim was 13 years-old. Although both the victim and the defendant at times misrepresented their age to each other, before he engaged in sexually abusive conduct with the victim, the defendant knew her real age. If, for the sake of argument, the defendant did not know the victim was 13 years-old, he should have known based on their numerous conversations, how she looked, and the fact that he picked her up after she exited a school bus in front of her school. The victim also had information, on her Facebook page, that indicated she was a minor. Evidence that Defendant was aware of his illegal behavior lies in the fact that he asked the victim to remain silent about their sexual relations so he would avoid jail.

There is no question that the victim was indiscriminate in her online behavior. Moreover, the government recognizes that the defendant was not the only person the victim had inappropriate conversations with. Nevertheless, it is her immaturity and lack of appreciation for the consequences of her actions that the defendant took advantage of. The sexual exploitation laws that protect minors exist to place the onus on the adults to make the responsible decisions regarding both on-line and real life relationships with

children. The defendant exploited the victim's lack of judgment when he convinced her to send him pictures, meet him in person, and have sexual relations with her. Unfortunately, 13 year-old girls do not appreciate the seriousness of sending pornographic images of themselves through the Internet, the dangers of meeting strangers, and risks associated with unprotected sexual acts. This lack of appreciation makes them more vulnerable to being influenced into engaging in destructive behaviors. The defendant exploited this vulnerability for his own sexual gratification.

B.  THE SENTENCE IMPOSED MUST REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW, AND PROVIDE JUST PUNISHMENT, 18 U.S.C. §3553(a)(2)(A).

"Law enforcement officers are well aware that predators have fled the public playground in favor of the anonymous internet in seeking out their victims." *Veazey*, 491 F.3d at 702. The seriousness of the offense relates directly to the harm that can befall minors when they are persuaded by strangers, through deception, to engage in sexually explicit conduct. Children can suffer psychological damage for years or can engage in behaviors that can haunt them for the rest of their life.

In this case, as a result of the defendant's conduct, the victim has created sexually explicit images of herself with almost no way of getting them back. If the defendant shared the images with anyone, the images could travel across the Internet at an exponential rate. Once the images are on the Internet, they can never be taken off. The victim and defendant also engaged in sexually explicit acts without the defendant wearing a condom. The victim faced the potential of an unwanted pregnancy or may have

received a sexually transmitted disease. If the defendant's conduct went undetected, he may have even persuaded the victim to leave her family and her home to live with him in California. The seriousness of the defendant's offense is directly related to the harm and permanent damage that either did or could have directly impacted the victim.

     A 135 month sentence will adequately represent the seriousness of the defendant's conduct. A 135 month sentence will also promote respect for the law and provide just punishment.

C.     THE SENTENCE IMPOSED MUST AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT AND PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT, 18 U.S.C. §§ 3553(a)(2)(B) and (a)(2)(C).

     A sentence of 135 months will serve as an adequate deterrence to others who are inclined to involve themselves in similar criminal conduct. As the Internet continues to provide adults with unprecedented access to children, a 135 months sentence will send a strong message that engaging in such conduct with a 13 year-old girl will carry grave consequences. Unfortunately, children regularly and blindly broadcast, through the Internet, personal information without hesitation. Children also arbitrarily communicate on-line with complete strangers. A 135 month sentence will serve to deter adults who seek to take advantage of young children acting irresponsibly on-line or who intend to use the Internet maliciously as a mechanism to facilitate sexually explicit conduct with children.

D.     AVOIDING UNWARRANTED SENTENCE DISPARITIES AMOUNG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT, 18 U.S.C. §3553(A)(6).

The Court has an obligation to ensure minimal sentence disparities among defendants with similar records that have been found guilty of similar conduct. A sentence of 135 months is below the advisory guideline range but will not create a significant disparity between similarly situated defendants.

## V. CONCLUSION

The government moves this Honorable Court to sentence Defendant to 135 months for the reasons discussed above.

          Respectfully submitted,

          BARBARA L. MCQUADE
          UNITED STATES ATTORNEY

          s/Matthew A. Roth
          Matthew A. Roth
          Assistant United States Attorney
          211 W. Fort Street, Suite 2001
          Detroit, Michigan 48226
          Phone: 313-226-9186
          E-Mail: matthew.roth2@usdoj.gov

Dated: June 21, 2012

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2012, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

> Juan Mateo, Attorney for Defendant

s/Matthew A. Roth
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  313-226-9186
E-Mail:  matthew.roth2@usdoj.gov
