```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                          SOUTHERN DIVISION

 3   UNITED STATES OF AMERICA,

 4             Plaintiff,
                                          HON. NANCY G. EDMUNDS
 5
     v.                                   No. 12-20021
 6
     ADELSO ALEXANDER VICENTE,
 7
               Defendant.
 8   _____/

 9

10                          SENTENCING

11                  Thursday, July 26, 2012

12                       3:20 p.m.

13

     APPEARANCES:
14
        For the Plaintiff:        MATTHEW A. ROTH
15                                U.S. Attorney's Office
                                  211 West Fort Street
16                                Suite 2001
                                  Detroit, Michigan  48226
17                                (313) 226-9100

18
        For the Defendant:        JUAN A. MATEO
19                                Law Offices of Juan A. Mateo
                                  535 Griswold
20                                Suite 1000
                                  Detroit, Michigan  48226
21                                (313) 962-3500

22

23

24           To Obtain Certified Transcript, Contact:
          Leann S. Lizza, CSR-3746, RPR, CRR, RMR, CRC, RDR
25                       (313) 234-2608
```

**TABLE OF CONTENTS**

Hearing                                                    Page

**Sentencing**                                               3

   Statement by Mr. Manzo                                   7

   Allocution by Mr. Mateo                                  8

   Reply by Mr. Roth                                        11

   Statement by Mr. Vicente                                 14

   Imposition of sentence by the Court                      15


Exhibits:                                               Received

   (None offered.)

SENTENCING

| | |
|---|---|
| 1 | July 26, 2012 |
| 2 | Detroit, Michigan |
| 3 | -   -   - |
| 4 | (Court, Counsel and Defendant present.) |
| 5 | (Call to order of the Court, 3:20 p.m.) |
| 6 | THE COURT CLERK:  All rise.  Court is in session. |
| 7 | THE COURT:  Be seated. |
| 8 | THE COURT CLERK:  The Court calls the case *United* |
| 9 | *States versus Adelso Vicente*, case Number 12-20021.  Place your |
| 10 | appearances on the record, please. |
| 11 | MR. ROTH:  Good afternoon, Your Honor.  Matthew Roth |
| 12 | on behalf of the United States. |
| 13 | MR. MATEO:  Good afternoon, Your Honor.  Juan Mateo |
| 14 | appearing on behalf of Mr. Vicente who stands to my left.  Your |
| 15 | Honor, he needs the assistance of a translator and in that role |
| 16 | is Laura Hein who is also to my left. |
| 17 | (Laura Hein, Interpreter, sworn, 3:21 p.m.) |
| 18 | THE COURT:  Thank you. |
| 19 | MR. ROTH:  Your Honor, if I may for a moment, the |
| 20 | victim's father is here and does not speak English.  We also |
| 21 | have a translator for him so that he can follow the |
| 22 | proceedings.  With the Court's permission, back there, if the |
| 23 | Court sees her talking to him, it would seem to be because |
| 24 | she's translating the proceedings to him as well. |
| 25 | THE COURT:  No problem.  Thank you. |

**SENTENCING**

```
 1              MR. ROTH:  Thank you, Your Honor.

 2              THE COURT:  This is the date and time set for

 3    sentencing in this matter.  Mr. Mateo, have you reviewed the

 4    presentence investigation report with Mr. Vicente?

 5              MR. MATEO:  Yes, I have, Your Honor.

 6              THE COURT:  And there is a dispute with respect to the

 7    cross-reference applied by the government at the time of the

 8    plea agreement and then not applied by the probation office.

 9    Perhaps I should let Mr. Roth speak to that first since it is

10    part of the plea agreement.  So you agreed to it initially.

11    Probation discounts it.  But Mr. Roth, why don't you go ahead

12    and speak to it now, and then I'll have you, Mr. Mateo.

13              MR. MATEO:  Thank you, Your Honor.

14              MR. ROTH:  Your Honor, the issue before the Court is

15    under Section 2G1.3(c)(1).  There's a cross-reference which

16    indicates that if the offense involved causing a minor, and

17    I'll paraphrase, to engage in sexually explicit conduct for the

18    purpose of producing a visual depiction of such conduct,

19    Section 2G2.1 is to be scored.  The cross-reference indicates

20    that the higher of 2G2.1 or 2G1.3 will be the controlling

21    guideline range.  The application though indicates that

22    cross-reference is to be construed broadly and specifically

23    includes all instances in which the offense involved employing,

24    using, persuaded or inducing an individual minor to engage in

25    sexually explicit conduct.
```

1           As the Court knows, sexually explicit conduct includes

2      and is defined under 18 U.S.C. 2256(2)(A) as a lascivious

3      display of the genital or pubic area of any person.

4           There is no question in this case, Your Honor, that

5      during the conversations through the phone and through the

6      Internet the defendant asked the victim on multiple occasions

7      to send him sexually explicit images of her engaged in sexually

8      explicit conduct.  I would refer the Court to the PSR in

9      paragraph 9 which is located on page 5 where it reflects the

10     fact that the defendant made these requests, and without

11     extrapolating further page 5, section paragraph 8 indicates

12     what she did in response to that request.

13          Based on that I think that there really is no question

14     that those requests were made, that it was at his insistence,

15     his persistence, I think, is what ultimately caused her to do

16     it.

17          The government submitted four cases out of the

18     Seventh, Ninth, Third and Tenth Circuits that essentially speak

19     to this issue and show that, in fact, this does apply.  The

20     Tenth Circuit specifically referenced the fact that even if the

21     pictures were not taken, it was the solicitation before those

22     pictures that triggers the cross-reference.  For those reasons

23     we believe it's applicable; that is why we calculated 168 to

24     210 months in the Rule 11 plea agreement.

25          THE COURT:  Mr. Mateo?

SENTENCING

6

```
1         MR. MATEO:  Your Honor, I agree that in the Rule 11
2    plea agreement we contemplated that those were the accurate
3    guidelines, and I guess the question is do you adopt what we've
4    done or do you adopt what the probation department has done.
5    In responding to the probation department's report, I note in
6    my reply brief to the government's sentencing memorandum that
7    our position is they waive any objection they have to that
8    calculation.
9         THE COURT:  Well, I have to tell you, I would accept
10   the plea agreement as originally written anyway.  I think it's
11   clear that the cross-reference applies.  Whether the government
12   filed a timely objection to the recommendation of the probation
13   department or not seems very clear to me that the
14   cross-reference applies in this case.  I mean the record is
15   replete with instances in which the defendant urged the victim
16   to send explicit pictures, then he took more pictures during
17   their encounters together.  I don't think there's any question
18   that the cross-reference applies.
19        MR. MATEO:  Your Honor, if I may only note that the
20   cases that were relied on by the government I think are
21   distinguishable and I think as I understand how the cases
22   interpret that guideline is was the defendant involved in some
23   sort of process of trying to generate child pornography, and I
24   wrote in my reply brief how I distinguished those cases and I
25   just want to make sure the record is clear that I've done that.
```

**SENTENCING**

| | |
|---|---|
| 1 | THE COURT:  I understood that position.  I just don't |
| 2 | agree with it. |
| 3 | MR. MATEO:  I appreciate it. |
| 4 | THE COURT:  Thank you, Mr. Mateo. |
| 5 | Any other issues with respect to the presentence |
| 6 | report, Mr. Mateo or Mr. Roth? |
| 7 | MR. MATEO:  No, Your Honor. |
| 8 | MR. ROTH:  No, Your Honor. |
| 9 | THE COURT:  Mr. Mateo, is there anything that you'd |
| 10 | like to say -- well, let me ask first, I understand that the |
| 11 | victim's father is in the courtroom.  Did he want to make a |
| 12 | statement or is he just here to -- |
| 13 | MR. ROTH:  He did want to make a statement, yes, Your |
| 14 | Honor. |
| 15 | THE COURT:  This would be an appropriate time for him |
| 16 | to do that. |
| 17 | MR. ROTH:  May he approach with the translator? |
| 18 | THE COURT:  Please. |
| 19 | MR. ROTH:  For the record, Your Honor, his name is |
| 20 | Salvador Manzo, M-A-N-Z-O. |
| 21 | THE COURT:  Good afternoon, Mr. Manzo. |
| 22 | MR. MANZO:  Good afternoon. |
| 23 | THE COURT:  I'm happy to hear what you have to say. |
| 24 | MR. MANZO:  I just want to let you know that this has |
| 25 | separated and split my family because of what he did, and in |

1    addition to that, I wouldn't want him to do to other families

2    what he did to mine.

3              THE COURT:  Thank you.

4              MR. MANZO:  You're welcome.

5              THE COURT:  Mr. Mateo, is there anything you'd like to

6    say on behalf of the defendant before I impose sentence?

7              MR. MATEO:  Yes, Your Honor.  May I approach the

8    podium?

9              THE COURT:  Please.

10             MR. MATEO:  Your Honor, we filed a sentencing

11   memorandum under seal and attached to that memorandum were

12   various letters of references and most importantly is a report

13   written by Dr. William Nixon who has evaluated Mr. Vicente.

14   And in addressing the sentencing factors that you need to

15   address, Your Honor, I will start with them and start with

16   factor A by the nature and circumstances of the offense and the

17   history and characteristics of the defendant.  Your Honor, he

18   is -- this is, in particularly, a horrible thing for

19   Mr. Manzo's family to go through.  I don't have a daughter but

20   I have many friends that do, and even though I think I

21   understand what was going through Mr. Vicente's mind, there's

22   no question that this was a horrible event.  What I want the

23   Court to at least look at is the fact that he is a young man of

24   29 years old, who has no prior criminal history, and I think

25   his psychiatric makeup is critical in order for you to

1    understand why he did what he did.

2         Dr. Nixon finds that he is an extremely immature young

3    man.  He is immature by way of life's experiences and he is

4    immature by way of sexual experiences.  There is no question

5    that he should have known better than to engage in the ongoing

6    contact that he did with this 13-year-old young lady.  But it

7    is also very clear that both of them engaged in this ongoing

8    dialogue and that she invited him into the state of Michigan.

9    Any other individual of any type of maturity level would have

10   not done this.

11        The question, I think, that's very critical is is he a

12   pedophile.  Is he the type of individual who is seeking out,

13   you know, minors of -- for sexual gratification.  I think

14   Dr. Nixon's report is very clear on that, that he is not, that

15   he got involved in this because of his lack of maturity.  He

16   has -- I think he's had only three experiences with sexual

17   activity involving other women.  This was his third.

18        He is an only child.  He left home when he was only 13

19   years old.  He has been in the United States, working for the

20   past nine years, and isolated in Palo Alto, California.  It

21   doesn't excuse his conduct, Judge, but I think it puts his

22   conduct into a certain context that is supported by the

23   findings of Dr. Nixon, that we're here because of his level of

24   immaturity or lack thereof and we're here because he, when he

25   should have known better, continued to engage in this conduct

```
 1    and is now facing a very serious penalty.
 2            With regard to the factor as far as your sentence is
 3    concerned to reflect the seriousness of the offense, to promote
 4    respect for the law and to provide just punishment for the
 5    offense, I understand the government's recommendation is 135
 6    months.  The statutory minimum here is 120 months.  I think,
 7    Your Honor, that a ten-year sentence does reflect the
 8    seriousness of the offense and would promote respect for the
 9    law.  I think anyone who is mature enough or even somebody with
10    his kind of background would understand, you can't engage in
11    this conduct.  And he's already done approximately 290 days or
12    so.  He is facing another sentence regarding the underlying
13    matter in the state court of Macomb County Circuit Court.  I
14    believe the recommendation in that case is going to be a five-
15    to fifteen-year sentence.  And so I think a sentence in the
16    range of 120 months, it is more than adequate to address that
17    factor.
18            The factor regarding adequate deterrence from criminal
19    conduct, Your Honor, the same comments I made I think apply to
20    that.
21            The factor regarding the protecting the public from
22    any future crimes from Mr. Vicente.  Mr. Vicente has no prior
23    criminal history, has never been involved in any crimes of
24    violence, and he will be deported after he serves his time in
25    this case, and I think a sentence that we're recommending
```

1    adequately addresses that.

2          The factor regarding a need for educational or

3    vocational training, I don't think there are any factors that

4    really apply to that other than to indicate that he has limited

5    education and any training would be something that he could

6    make do or make use of, but I think because of his immigration

7    status, Your Honor, he is not going to be afforded any of that

8    type of training.

9          The bottom line, Judge, he is going to -- the other

10   factors, I don't think, apply.  The bottom line is he's going

11   to be facing a very serious sentence, whatever you do, and I'm

12   asking the Court that you do what -- what we've recommended.  I

13   think a ten-year sentence for this offense is more than

14   adequate and is reasonable and it's sufficient to punish him

15   for what he has done.

16          THE COURT:  Thank you, Mr. Mateo.

17          Mr. Roth?

18          MR. ROTH:  Thank you, Your Honor.

19          May I approach the podium?

20          THE COURT:  Please.

21          MR. ROTH:  Thank you.

22          Your Honor, I want to begin by telling the Court that

23   we do not challenge Dr. Nixon's conclusion that the defendant

24   is not -- is not a pedophile.  This seems to be more of a

25   situation where the defendant found an individual who was

1   willing to engage him in these conversations and pursued the

2   individual more so than specifically a child.  However, there

3   are definitely some issues that concern the government.

4        In Dr. Nixon's report on page 3, the defendant makes a

5   comment that he thought the parents were in agreement and that

6   she was going to live with him and they were going to live

7   together.  I don't think that there's any question in this case

8   in the facts that that's not an accurate statement.  There's no

9   way he could have thought that the parents thought that this

10  was going to be a situation where they were okay with.  He

11  talked with her in a secret manner.  He never went to the

12  house.  He waited for her to go to school.  When she got off

13  the school bus, he picked her up.  There is nothing at all that

14  would support that conclusion.  And I don't know if that's the

15  immaturity that Dr. Nixon cites or that it is somebody who is

16  trying to minimize culpability.  But nevertheless, I think it's

17  important to point out that that's not a truthful statement.

18       I think the most concerning thing is Dr. Nixon's

19  conclusion where he indicated that the defendant is a moderate

20  risk to seek attention from females with little regard as to

21  the consequences of his actions, and I think that diagnosis

22  really hits the nail on the head and really points to why this

23  individual presents a danger.  I think the doctor was right,

24  the defendant exhibited significant recklessness.  He totally

25  disregarded the age of the victim.  He had very -- he had

1    tunnel vision.  What he saw was a female who was willing to

2    engage him in this relationship and regardless of his age -- of

3    her age, he decided he was going to move forward.  He also

4    acknowledged that he recognized that what he wanted to do and

5    what he did do was illegal and that he knew he was to wait

6    until she was 18 years old.  But, again, as Dr. Nixon said,

7    little regard to the consequences.  He absolutely went forward

8    even knowing what he did was illegal.

9         There's also recklessness in the fact the way he did

10   it.  Engaged in the acts he did without protection puts the

11   victim at severe risk not only because of her age but

12   physically.  We talk about concerns about pregnancy and

13   diseases and so forth.  I think there's no question that the

14   only reason he came here was to engage in these acts with the

15   victim.  When he picked her up in front of the school, he

16   immediately took her to the motel where a room that he had

17   already checked out that he already had booked.  There's no

18   question what his purpose was.  He talks about loving her and

19   caring for her but really what it came down to is the second he

20   could get his hands on her, he took her to the motel where he

21   had a room waiting.  That also is concern to the government.

22        And, finally, another issue that's important for the

23   Court to know, in this case the defendant was very persistent.

24   The victim did not acquiesce to pictures and to relationship

25   and to the sexual acts immediately.  It was a constant barrage

1   of requests over and over again.  It was "if you love me, then

2   this; if you love me, then that."  I'm not standing before the

3   Court indicating that the victim was not complicit in portions

4   of this.  But, again, the victim is a 13-year-old child of

5   which he knew and it was this persistence that I think at the

6   end of the day got her and him to where they ended up at the

7   time that they were arrested.

8           So we talk about deterrence, and we talk about

9   punishment which are important, but in this case we have

10  somebody who deterrence doesn't necessarily seem to be an

11  issue, as Dr. Nixon points out.  Little regard to the

12  consequences of his actions, and as the facts point out, he

13  didn't care age, consequences or anything.  He did what he

14  wanted to do.  He was like a missile that honed in on her and

15  struck as soon as he could.  And that's the reason why we don't

16  think 120 months is appropriate.  We think a stronger sentence

17  of 135 months is appropriate.

18          THE COURT:  Mr. Vicente, is there anything you'd like

19  to say on your behalf before I impose sentence?

20          THE DEFENDANT:  Yes.  First, I would like to ask to

21  forgive me to Maria Manzo, also to Maria's parents.  It wasn't

22  my intention to commit this offense, and I know I committed

23  this offense.  I know I shouldn't have sent any pictures, also

24  no messages and no e-mails because I knew it was an offense.

25  But I did it, and that's why I'm here.  And I hope I can be

1    forgiven for the crime I commit.  It was never my intention to

2    damage Maria, neither to her parents, Maria's parents, neither

3    the public nor the state.  I had already an experience in jail

4    and I know it's nothing good, not to be in jail, even worse in

5    prison.  And I already have now an experience not to do this

6    crime again.  And they can forgive me, Your Honor, for this.

7              THE COURT:  Thank you, Mr. Vicente.

8              Well, with the cross-reference in this case, the

9    guidelines are actually 168 to 210 months although without the

10   cross-reference they're 120 to 135.  Government's only asking

11   for the top of the noncross-reference guideline range, the 135.

12   The guidelines, of course, are advisory.  They're not

13   mandatory, although the ten-year minimum is mandatory in this

14   case.  But the Court is directed under 18 U.S.C. Section

15   3553(a) to impose a sentence that is sufficient but not greater

16   than necessary to achieve the statutory objectives.

17             The Court is directed, first, to look at the nature

18   and circumstances of the offense and the history and

19   characteristics of the defendant.  In this case the

20   defendant -- I have to agree with the government's

21   characterization here.  It seems he had tunnel vision without

22   any regard for the consequences.  Whether it was a result of

23   immaturity or some psychological lapse or whatever, he honed in

24   on a 13-year-old girl and badgered her persistently until she

25   was willing to submit naked pictures of herself and engage in

1   sexual acts which were far beyond her maturity and which were

2   physically painful and degrading.  And apparently, as I

3   understand this, he was apprehended as a result of a sting

4   involving another victim, another potential victim.  I don't

5   know how far that went but -- no?

6        MR. ROTH:  No, Your Honor.  This -- he was arrested

7   because the child was missing and they were looking for the

8   particular child.

9        THE COURT:  Ah.

10        MR. ROTH:  And I think they had an idea the vehicle

11   which he had driven and that's how they honed in on this.

12        THE COURT:  Oh.

13        MR. ROTH:  There's no evidence that we know that there

14   was any other victims involved.

15        THE COURT:  But he traveled from California to

16   Michigan on two separate occasions to entice the victim to have

17   sex with him.  He was successful on his second attempt.  I mean

18   that is not a casual and incidental encounter.  That's

19   something that obsessed him over a substantial period of time

20   and which took considerable effort to undertake and achieve.  I

21   don't know that he can be deterred.

22        I accept Dr. Nixon's analysis that he's not a

23   pedophile.  We've certainly seen enough pedophiles in this

24   court and Dr. Nixon has seen enough pedophiles that he would

25   know if he is.  But there is something seriously problematic

| | |
|---|---|
| 1 | with this young man that hopefully can be addressed as a matter |
| 2 | of deterrence with a lengthy custody sentence which he'll get |
| 3 | whether I give him the ten-year mandatory minimum or the 135 |
| 4 | months the government is requesting. |
| 5 | And I believe that the government's request is the |
| 6 | appropriate sentence in this case given the serious physical |
| 7 | nature of this offense and the effort that it took on behalf of |
| 8 | this defendant to achieve this, the mindset that had to have |
| 9 | been there for this to have happened this way.  Seems to me |
| 10 | that the top of the guideline range is the more appropriate |
| 11 | place to go. |
| 12 | So on Count 1 of the information, pursuant to the |
| 13 | Sentencing Reform Act of 1984, the Court, considering the |
| 14 | sentencing guidelines and factors contained in 18 U.S.C. |
| 15 | Section 3553(a), hereby commits the defendant to the custody of |
| 16 | the United States Bureau of Prisons for a term of 135 months. |
| 17 | Upon release from imprisonment, Defendant shall be |
| 18 | placed on supervised release for a term of five years.  It's |
| 19 | further ordered that the defendant pay a special assessment of |
| 20 | $100 which would be due immediately. |
| 21 | The Court waives the imposition of a fine, the costs |
| 22 | of incarceration and cost of supervision due to the defendant's |
| 23 | lack of financial resources. |
| 24 | While on supervision, Defendant shall abide by the |
| 25 | standard conditions adopted by the Court and with the following |

1    special conditions.  Due to the defendant's personal history

2    and the characteristics of the instant offense, the following

3    conditions are ordered.  Defendant shall comply with the

4    requirements of the Sex Offender Registration and Notification

5    Act as directed by the probation officer, the United States

6    Bureau of Prisons or any state sex offender registration agency

7    in which he resides, works, is a student or was convicted of a

8    qualifying offense.  Defendant shall only access the Internet

9    through one Internet-capable device.  All other Internet

10   capable devices such as cellular phones and gaming consoles

11   shall not have the Internet connected.  The defendant is

12   prohibited from accessing any online computer service at any

13   location including but not limited to public libraries,

14   Internet cafes and places of employment or education without

15   the permission of the probation officer.  Defendant shall not

16   have contact directly or indirectly with any victim or witness

17   in the instant offense unless approved by the probation

18   officer.

19          Defendant shall not associate with minor children

20   under the age of 18 except in the presence of a responsibile

21   adult who is aware of the nature of his background and current

22   events and who has been approved by the probation officer.

23   Defendant shall not frequent places where children congregate

24   on a regular basis such as but not limited to school grounds,

25   playgrounds, child toy stores, video arcades and the like.

```
 1              Mr. Vicente, you have -- I don't think you have the
 2    right to appeal the sentence.  It is within the guideline
 3    range.  To the extent that there is any appealable issue, it
 4    would have to be filed within ten days.
 5              Mr. Roth?
 6              MR. ROTH:  Your Honor, we'd ask the Court to impose a
 7    no contact order with the victim and the victim's family for
 8    the duration of the time he is on supervised release.
 9              THE COURT:  I thought I said that, but if I didn't --
10              THE COURT CLERK:  You said victim or witness.
11              THE COURT:  Victim or witness or victim's family.
12              MR. ROTH:  Thank you, Your Honor.
13              THE COURT CLERK:  Designation?
14              THE COURT:  Do you want any kind of designation,
15    Mr. Mateo?
16              MR. MATEO:  I'm sorry.
17              THE COURT:  Any place of confinement designated?
18              MR. MATEO:  I was just going to ask the Court to
19    recommend a facility in the Palo Alto, California area.
20              THE COURT:  I'll ask for something in northern
21    California, if possible.
22              MR. MATEO:  Thank you.
23              THE COURT:  Are there any objections to the sentence
24    just pronounced other than what's already been stated on the
25    record, Mr. Roth?
```

1          MR. ROTH:  No, Your Honor.

2          THE COURT:  Mr. Mateo?

3          MR. MATEO:  No, Your Honor.

4          THE COURT:  All right.  Thank you very much.  Good

5   luck, Mr. Vicente.

6          MR. ROTH:  Thank you, Your Honor.

7          THE COURT CLERK:  Court stands in recess.

8      (Proceedings concluded, 3:48 p.m.)

9                          -   -   -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**SENTENCING**

```
 1                      CERTIFICATION OF REPORTER

 2

 3       I, Leann S. Lizza, do hereby certify that the above-entitled

 4   matter was taken before me at the time and place hereinbefore

 5   set forth; that the proceedings were duly recorded by me

 6   stenographically and reduced to computer transcription; that

 7   this is a true, full and correct transcript of my stenographic

 8   notes so taken; and that I am not related to, nor of counsel to

 9   either party, nor interested in the event of this cause.

10

11

12   S/Leann S. Lizza                              8-15-2019

13   Leann S. Lizza, CSR-3746, RPR, CRR, RMR, RDR    Date

14

15

16

17

18

19

20

21

22

23

24

25
```