UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      CASE NO. 12-cr-20021

-v-                                          HON. NANCY G. EDMUNDS

ADELSO ALEXANDE VICENTE,

        Defendant.

_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO RECONSIDER SENTENCE [ECF NO. 15]**

I.    <u>Introduction</u>

Vincente, at 28 years-old, drove from California to the Eastern District of Michigan just to engage in sexual acts with a real 13 year-old girl. He met her at her school where she got off the school bus and went directly into Vicente's car. From there, he took her to a motel where he engaged in anal and attempted to engage in vaginal sex. The victim's parents reported her missing and law enforcement later found her at the motel with Vicente. A subsequent investigation revealed that Vincente was involved in a long-term sexually explicit online relationship with the victim. Throughout their relationship, Vicente sent approximately 20 naked pictures of himself to the victim and incessantly pressured the victim to do the same.

Now, almost nine years after he was sentenced for coercing a minor to engage in sexual activity, Vicente moves this Court to reconsider his 135 month sentence. Vicente's motion fails to provide a legal avenue or justification to permit the Court to reconsider his sentence. For this reason, the Court should deny his motion.

II.   Statement of Facts

On the morning of September 14, 2011, a 13 year-old female ("MV-1") was reported missing. (PSR ¶ 7). She was last seen in the morning, boarding her school bus. Once she arrived at school, MV-1 exited the bus and entered a car driven by an adult male. (PSR ¶ 7). Later that day, the Shelby Township Police Department located the male's car at the War-Del Motel in Shelby Township. MV-1 was subsequently located when she exited a room from the motel. (PSR ¶ 7). MV-1 was with Vicente.

MV-1 was interviewed and reported that she first met Vicente four months earlier through Facebook. (PSR ¶ 7). At first, the victim continuously refused to provide even her cell phone number. The victim eventually gave in and they exchanged numbers. (PSR ¶ 8). They communicated telephonically and through text messages. (PSR ¶ 8). Vicente later asked for and received MV-1's address.

Approximately one week after Vicente received MV-1's address, he drove from California to Michigan to meet MV-1 in person. (PSR ¶ 8). They met at a

park near MV-1's home for approximately two hours. (PSR ¶ 8). During that time, they talked, hugged, kissed, and Vicente gave MV-1 a stuffed animal. (PSR ¶ 8). The defendant asked MV-1 to have sex with him, but MV-1 refused. (PSR ¶ 8). After meeting MV-1 in person, Vicente returned to California.

During their on-line conversations, MV-1 told Vicente that she was 13 years-old. (PSR ¶ 8). Vicente, who was from Guatemala and lived in California, told MV-1 that he was 20 years-old. (PSR ¶ 7, 8, 10). As their on-line relationship developed, Vicente repeatedly engaged in sexually inappropriate conversations with MV-1. He also asked MV-1 for naked pictures. (PSR ¶ 9).

Vicente regularly asked MV-1 for "sexier" type pictures. They spoke of their affection for and how much they missed each other. (PSR ¶ 9). Vicente continually asked for pictures of MV-1. (PSR ¶ 9). On one day, Vicente wrote "why if she loves him so much she won't send a naked picture . . . ." Later that day, Vicente wrote that he "hasn't died yet but wouldn't mind dying between her legs." The next day, Vicente asked MV-1 "since she loves him, [will he get] . . . the picture." The day after, Vicente told MV-1 that "he continues to suffer because he doesn't have any naked picture of her to look at but he knows she will send it soon."

Vicente sent nude photographs of himself to MV-1's cellular phone. (PSR ¶ 8). MV-1 reported that over several months, through text messages, she received approximately 20 pictures of Vicente naked. (PSR ¶ 8). Vicente continuously

wanted MV-1 to take and send naked pictures of herself. MV-1 again and again refused or made excuses for not sending Vicente pictures. Nevertheless, Vicente was relentless and repeatedly implored MV-1 to demonstrate her love by sending him naked pictures. As their "love" intensified, Vicente asked MV-1 "if she would abandon everything she has to go live with him." When MV-1 indicated she might consider it, Vicente asked "if she would leave her family and live with him while continuing school . . . ." On the same day he told MV-1 "if she loves him, why she is [sic] scared to send him a nude picture." MV-1 responded that "she doesn't really know why but it [sic] just scared to do it." Despite her refusal to send him a picture, MV-1 reiterated her love for Vicente.

In the end, MV-1 gave in and agreed to send Vicente naked pictures. (PSR ¶ 8). Vicente told MV-1 what pictures to take, what body parts to show, and to touch her breasts and vaginal area in the pictures. In total, MV-1 texted approximately 25 naked pictures of herself to Vicente's cellular phone. (PSR ¶ 8). MV-1 indicated that they also talked "dirty" to each other which included conversations about sexually explicit conduct. (PSR ¶ 8). Vicente repeatedly solicited MV-1 for sex. (PSR ¶ 8, 9). After some time, MV-1 agreed to have sex with Vicente if he came back to Michigan. (PSR ¶ 9).

On September 12, 2011, Vicente traveled from California to Michigan for the second time. Vicente arrived early in the morning and arranged to meet MV-1

at her school. MV-1 exited her bus and got directly into Vicente's car. (PSR ¶ 7). Vicente drove them to a motel where they entered Vicente's room. (PSR ¶ 7).

Vicente and MV-1 started kissing and, in a short time, undressed. (PSR ¶ 7). Vicente gave her "hickies" on her neck and chest. (PSR ¶ 7). Vicente digitally penetrated MV-1, performed oral sex and anal sex on MV-1, and had MV-1 perform oral sex on him. (PSR ¶ 7). MV-1 reported that the anal sex, which occurred twice, hurt so much that she had to ask Vicente to stop. Vicente attempted to put his penis inside MV-1's vagina but stopped because of the pain. Vicente never used a condom. Before they got dressed, Vicente and MV-1 took a shower together. During a forensic interview, MV-1 was shown three pictures taken in the motel room. (PSR ¶ 8). MV-1 identified herself in the pictures. She was unaware Vicente took the pictures. (PSR ¶ 8). MV-1 also reported that Vicente directed her not to talk about what happened. Vicente was concerned he could go to jail for having sex with an underage girl.

A forensic examination of Vicente's phone and SD card revealed multiple naked pictures of MV-1. The pictures depicted MV-1's breasts, buttocks, and vagina. Most were taken by MV-1, but some were surreptitiously taken by Vicente while in the motel room with the victim.

On January 1, 2012, an Information was filed that charged Vicente with one count of persuading or coercing a minor to engage in sexual activity, in violation of

18 U.S.C. § 2422(b). (ECF No. 1). On April 9, 2012, Vicente pleaded guilty as charged. On July 26, 2012, the Court sentenced Vicente to a custodial sentence of 135 months with the Bureau of Prisons. (ECF No. 13, PageID.52).

III.  Law and Argument

Vicente's motion moves the Court to reconsider or modify his sentence. (ECF No. 15, PageID.78). In support to his request, Vicente cites his lack of disciplinary reports while incarcerated, his participation in BOP programming, the support of his family, his acceptance of responsibility, and his desire to see his sickly mother. (ECF No. 15, PageID.78).

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment constitutes a final judgment. With only a few very limited exceptions, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(b). The limited exceptions, in part, include extraordinary and compelling reasons that warrant a modification, if the defendant is at least 70 years-old and meets certain conditions, or the need to correct a clear error. (18 U.S.C. § 3582(c)(1)). A defendant must fit his argument within a limited exception authorized by law because "[t]here is simply no such thing as a 'motion to reconsider' an otherwise final sentence." *United States v. Dotz*, 455 F.3d 644, 648 (6th Cir. 2006).

It is true that Vicente has not received any disciplinary actions, that he has participated in BOP programming, and, through his plea, accepted responsibility for his criminal conduct. Vincente's mother may be sick. Nevertheless, these facts do not qualify under the requisite exceptions for a modification of his sentence. Further, Vicente has not argued that he qualifies under any of the exceptions. A "sentencing court's authority to alter a sentence of imprisonment after it has been imposed is narrowly circumscribed, per 18 U.S.C. § 3582(c)(1)(B)." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008).

It is important to note that, despite his positive accomplishments while incarcerated, Vicente has not participated in a BOP sex offender treatment program. Vincente engaged in sexually explicit conduct online with the 13 year-old victim. He later drove from California to the Eastern District of Michigan to take her from her school bus to a motel. At the motel, he engaged in sexually abusive conduct. Despite the exceptional lengths he took to engage the victim in child sexually abusive activity, he has not received the invaluable therapy available through the BOP. To participate in sex offender treatment, Vincente must agree to participate in one of the treatment programs. SEX OFFENDERS, https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp (last visited July 25, 2021). The treatment is designed to reduce a sex offender's "risk of future offending" and teaches "basic skills and concepts to . . . understand their past

offenses . . . ." *Id*. Even if Vicente qualified for a modification of his sentence, the government would still object based on his failure to receive sex offender treatment.

IV. <u>Conclusion</u>

For the reasons argued above, the government moves this Honorable Court to DENY Vicente's motion.

                                        SAIMA S. MOHSIN
                                        ACTING UNITED STATES ATTORNEY

                                        s/*Matthew Roth*
                                        Matthew Roth
                                        Assistant United States Attorney
                                        211 West Fort Street, Suite 2001
                                        Detroit, Michigan 48226
                                        Phone: 313-226-9186
                                        E-mail: Matthew.Roth2@usdoj.gov

Dated: July 28, 2021

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 28, 2021, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF, for uploading and service by electronic notice to counsel and parties authorized to receive electronically Notices of Electronic Filing.

s/*Matthew Roth*
Matthew Roth
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan  48226
Phone:   313-226-9186
E-mail:   Matthew.Roth2@usdoj.gov

Dated:  July 28, 2021